# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

SALLY VILLAVERDE,

        Plaintiff,

vs.

ROMEO ARANAS, *et al.*,

        Defendants.

Case No.: 2:18-cv-00921-GMN-EJY

**ORDER**

Pending before the Court is Defendants Drs. Romeo Aranas and Gregory Bryan, Jennifer Nash, and Tawnya Perry's (collectively, "Defendants'") Motion for Summary Judgment, (ECF No. 62). Sally Villaverde ("Plaintiff"), filed Responses, (ECF Nos. 75 & 77),[1] and Defendants filed a Reply, (ECF No. 82).

Also pending before the Court is Plaintiff's Judicial Notice of Adjudicative Facts, (ECF No. 75). Defendants filed a Response, (ECF No. 79), and Plaintiff filed a Reply, (ECF No. 81).

For the reasons discussed below, the Court **GRANTS in part and DENIES in part** Defendants' Motion for Summary Judgement and **DENIES** Plaintiff's Judicial Notice of Adjudicative Facts.[2]

---

[1] Plaintiff filed a Response to Defendant's Motion for Summary Judgment ("MSJ"), but he does not fully address the MSJ's substantive issues. (*See generally* Resp. MSJ, ECF No. 77). He does, however, address the MSJ in the Judicial Notice of Adjudicative Facts ("JNAF"). (*See generally* JNAF, ECF No. 75). The Court will liberally construe the JNAF as a Response to Defendants' MSJ. *See Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010) (explaining that courts should "avoid applying summary judgment rules strictly" when construing a pro se inmate's motions and pleadings liberally).

[2] The Court denies Plaintiff's request for judicial notice of adjudicative facts. In the JNAF, Plaintiff asks the Court to take judicial notice that: (1) he diligently sought access to sealed exhibits in support of Defendants' Motion for Summary Judgment, (JNAF 2:18–28); (2) he was unable to see or review the sealed exhibits despite submitting two requests to HDSP's warden and a letter to Defendants, (*Id.* 2:20–26), (Inmate Request Forms, Exs. 1 & 2 to JNAF, ECF No. 75); (3) he finished his response to Defendants' MSJ without being able to see Defendants' sealed exhibits, (*Id.* 2:27–3:3); and (4) Defendants violated Federal Rule of Civil Procedure 56(f) because Plaintiff could not review the sealed exhibits prior to responding to their MSJ, (*Id.* 2:27–3:13).

## I. BACKGROUND

This case arises out of Defendants' alleged constitutional violations pursuant to the Eighth Amendment while Plaintiff was incarcerated at High Desert State Prison ("HDSP"). (*See* Am. Compl. at 4–12, ECF No. 7); (Screening Order 3:17–21, ECF No. 9).  On July 19, 2017, Plaintiff submitted a medical kite to the HDSP Medical Department, requesting medical attention because he was experiencing "dizziness, severe headaches, drowsiness, cramp[ed] muscles and tingling on the hands and feet[], and short[ness] of breath." (*See* Am. Compl. at 4); (Med. Kite dated July 19, 2017, Ex. A to Resp. Mot. Summ. J. ("Resp. MSJ"), ECF No. 75-1). In response to the kite, on July 20, 2017, the medical department indicated that the physician was notified for a sick call. (Screening Order 4:10–11).  The new physician told Plaintiff that his condition was poor and his blood pressure was high, and this doctor recommended changing Plaintiff's blood pressure medication due to Plaintiff's high blood pressure. (*Id.* 4:26–18). Plaintiff alleges that Dr. Bryan's failure to provide medical care created a risk to his life and the deterioration of his vision. (*Id.* 4:18–20).

On August 6, 2017, Plaintiff filed an informal grievance, complaining that as a hypertense patient, he was not receiving proper care and requested HDSP to check his blood pressure. (*Id.* 4:20–22); (*see also* Informal Grievance 2006.30.50798, Ex. A to Resp. MSJ, ECF No. 75-1).  He described his symptoms and complained that, despite the medical department's claim that he would be seen by a doctor, he had not received any medical attention. (Screening Order 4:22–24).  Assistant Warden Jennifer Nash, the grievance coordinator, denied his grievance, and responded by stating that according to Plaintiff's medical records, his blood pressure was checked a couple of times. (*Id.* 4:24–26); (*see also* Inmate Grievance Report

---

However, the Court denies Plaintiff's JNAF because he does not demonstrate how the facts alleged are "generally known within the court's territorial jurisdiction" or how they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *See Harris v. Cty. of Orange*, 682 F.3d 1126, 1131–32 (9th Cir. 2012) (quoting Fed. R. Evid. 201).

Level IF, Ex. A to Resp. MSJ, ECF No. 75-1). She also advised him to call a "man down" if he suffered a medical emergency. (Screening Order 5:2–4); (*see also* Inmate Grievance Report Level IF, Ex. A to Resp. MSJ). On October 3, 2017, Plaintiff appealed the denial in a first-level grievance, stating this response was inadequate and inaccurate, as it did not address Plaintiff's grievance regarding the lack of medical care and attention to hypertense patients such as himself and care beyond blood pressure checks. (Screening Order 5:7–10); (*see also* First-Level Grievance 2006.30.50798, Ex. A to Resp. MSJ, ECF No. 75-1). On October 11, 2017, Director of Nursing Services, Bob Faulkner, granted Plaintiff's first-level grievance and requested that the medical staff check his blood pressure at least weekly. (Inmate Grievance Report Level 1, Ex. A to Resp. MSJ, ECF No. 75-1). Plaintiff's medical records also suggest that Dr. Bryan ordered he receive weekly blood pressure checks for four weeks. (Nevada Department of Corrections' Physician's Orders, Ex. A to Resp. MSJ, ECF No. 75-1). On November 8, 2017, Plaintiff submitted a second-level grievance to explain that the nurse who was supposed to check his blood pressure on a weekly basis failed to do so. (Second-Level Grievance 2006.30.50798, Ex. A to Resp. MSJ, ECF No. 75-1).

On May 18, 2018, Plaintiff filed the instant Complaint, alleging Defendants violated his Eighth Amendment right against cruel and unusual punishment by acting deliberately indifferent towards his hypertension. (*See* Am. Compl. at 4–12). Specifically, he contends Dr. Bryan ignored his requests to be treated for his hypertension. (*Id.* at 4–5). He also alleges Associate Warden Jennifer Nash denied him the opportunity to be treated for his chronic illness by denying his informal grievance against the medical staff. (*See id.* at 5–7). As to Nurse Tawnya Perry, Plaintiff claims she failed to treat his hypertension by failing to abide by a physician's order to regularly check his blood pressure. (*See id.* at 8–9). Finally, Plaintiff alleges Dr. Bryan ignored his second-level grievance against Nurse Perry for failing to check his blood pressure. (*See id.* at 10–11). In addition, Plaintiff seeks $250,000 in actual damages

1 against Defendants, punitive damages against the HDSP Medical Department staff, and for the
2 removal of Defendants from their current positions. (*See id.* at 16).

3 Defendants thereafter filed the instant Motion, (ECF No. 62), as to Plaintiff's deliberate
4 indifference claims. (*See generally* Mot. Summ. J. ("MSJ"), ECF No. 62).[3]

## II. **LEGAL STANDARD**

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is a sufficient evidentiary basis on which a reasonable factfinder could rely to find for the nonmoving party. *See id.* "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968)). "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

---

[3] In Plaintiff's JNAF, he alleges that despite multiple requests to Defendants, he was unable to review the sealed exhibits to their MSJ before filing his response. (*See* JNAF at 2–3, ECF No. 75). Plaintiff was later able to review the sealed exhibits after the Court ordered Defendants to disclose them to Plaintiff. (*See* Min. Order, ECF No. 95); (Suppl. Resp. MSJ, ECF No. 98).

1    In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). However, the nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of America*, 285 F.3d 764, 783 (9th Cir. 2002)

(internal citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252. In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

### III. DISCUSSION

Defendants seek summary judgment on two grounds that: (1) Defendants did not act deliberately indifferent towards Plaintiff; and (2) qualified immunity applies to Defendants. (MSJ 5:1–19:10, 19:11–23:10). The Court addresses each ground in turn.

#### A. 42 U.S.C. § 1983: Deliberate Indifference

As discussed above, Plaintiff alleges that Defendants deliberately withheld medical treatment relating to his hypertension, in violation of his Eighth Amendment right against cruel and unusual punishment. (*See* Am. Compl. 4–12). Defendants argue that Plaintiff fails to demonstrate "any material evidence that Defendants were deliberately indifferent to his hypertension medical care" and further fails to demonstrate "that he suffered problems so severe to cause significant harm as a result of any delayed care." (MSJ 8:13–18).

To bring a successful Section 1983 claim, a plaintiff must allege (1) a violation of a constitutional right and (2) must show that the alleged violation was committed by "a person

acting under color of state law." *West v. Atkins*, 487 U.S. 42, 49 (1988). Specifically, "to maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). A plaintiff must satisfy a two-part test to demonstrate deliberate indifference. *Id.* (citing *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997)). "First, the plaintiff must show a 'serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain."'" *Id.* (citing *McGuckin*, 974 F.2d at 1059). "Second, the plaintiff must show the defendant's response to the need was deliberately indifferent." *Id.* (citing *McGuckin*, 974 F.2d at 1060). The plaintiff can satisfy the second prong by demonstrating "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Id.* (citing *McGuckin*, 974 F.2d at 1060).

Here, Defendants concede that Plaintiff's hypertension is a serious medical need. (MSJ 8:13–14). The Court thus limits its below discussion to the second prong of the two-part test—whether each Defendant's alleged misconduct arises to the level of deliberate indifference in violation of the Eighth Amendment. The Court individually analyzes the actions of each Defendant, beginning with Nurse Tawnya Perry.

### 1. Nurse Tawnya Perry ("Nurse Perry")

Plaintiff alleges that Nurse Perry's failure to follow the physician's order to check his blood pressure on a weekly basis constituted deliberate indifference. (Am. Compl. at 8–9). Defendants move for summary judgment, arguing that Nurse Perry was not deliberately indifferent to Plaintiff's hypertension, and further, that Plaintiff failed to exhaust his administrative remedies prior to bringing this action because he did not properly exhaust

Nevada Department of Corrections' ("NDOC's") grievance procedures. (MSJ 10:1–6). The Court will address whether Plaintiff exhausted his administrative remedies.

### i. Exhaustion of Administrative Remedies

Defendants briefly argue that Plaintiff's claim against Nurse Perry is procedurally barred because Plaintiff failed to initiate an informal grievance based on Nurse Perry's alleged failure to treat and that he otherwise failed to exhaust all administrative remedies. (MSJ 10:1–6). In contrast, Plaintiff insists that he properly exhausted his administrative remedies. (Resp. MSJ 3:14–20). The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The exhaustion requirement in prisoner cases is mandatory. *Woodford v. Ngo*, 548 U.S. 81, 84 (2006). Further, the PLRA requires "proper exhaustion" of administrative remedies. *Id.* at 93. Proper exhaustion "means that a grievant must use all steps the prison holds out, enabling the prison to reach the merits of the issues." *Griffin v. Arpaio*, 557 F.3d 1117, 1119–20 (9th Cir. 2009).

Courts should decide exhaustion before examining the merits of a prisoner's claim. *Albino v. Baca*, 747 F.3d 1162, 1170 (9th Cir. 2014). The defendant bears the initial burden to show that there was an available administrative remedy, and that the prisoner did not exhaust it. *Id.* at 1169, 1172. Once that showing is made, the burden shifts to the prisoner, who must either demonstrate that he, in fact, exhausted administrative remedies or "come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id.* at 1172. The ultimate burden, however, rests with the defendant. *Id.* Summary judgment is appropriate if the undisputed evidence, viewed in the light most favorable to the prisoner, shows a failure to exhaust. *Id.* at 1166, 1168; *see* Fed. R. Civ. P. 56(a).

NDOC Administrative Regulation ("NDOC AR") 740, entitled "Inmate Grievance Procedure," catalogs the administrative remedies and associated procedures available to NDOC inmates. NDOC AR 740.  For a plaintiff to exhaust available remedies, NDOC AR 740 first requires the inmate to either discuss the issue with a staff member or submit an inmate request form prior to initiating the grievance process. *Id.* at 740.08(1).  For claims regarding medical issues, the procedure continues as follows: (1) an Informal Grievance, which is "responded to by a charge nurse or designee of the Director of Nursing," *Id.* at 740.08; (2) a First-Level Grievance appealing the Informal Grievance decision to the "highest level of Nursing Administration," *Id.* at 740.09; and (3) a Second-Level Grievance, which is decided by the Medical Director, *Id.* at 740.10.  "An inmate whose grievance is denied in its entirety may appeal the grievance to the next level . . . unless the action requested has already been Granted at a lower level." *Id.* at 740.03(6).  An inmate may appeal a grievance of any level to the following level within five days after the return of a decision. *Id.* at 740.08(12)(A), 740.09(5)(A).  However, the grievance process is complete once a grievance is granted at any level; an inmate cannot appeal a granted grievance. *Id.* at 740.03(6)(C).

Here, Plaintiff submitted a medical kite on July 19, 2017, claiming that he was experiencing tingling in his hands and feet, dizziness, light headedness, shortness of breath, and loss of eyesight. (*See* Med. Kite Dated July 19, 2017, Ex. A to Resp. MSJ).  He also requested HDSP to check his blood pressure or determine if his prescription of medication may need to change. (*Id.*).  After submitting the medical kite, Plaintiff submitted an informal grievance again requesting that HDSP check his blood pressure. (Informal Grievance 2006.30.50798, Ex. A to Resp. MSJ).  He properly appealed his informal grievance. (*See* First-Level Grievance 2006.30.50798, Ex. A to Resp. MSJ).  At this point, the grievance process was complete. NDOC AR 740.03(6)(C) (stating that "the grievance process is considered complete and the inmate's administrative remedies exhausted" when a grievance is granted at any level).

Although Plaintiff submitted a second-level grievance explaining that the nurse who was supposed to check his blood pressure on a weekly basis failed to do so, this grievance was effectively void because the grievance process terminated after Mr. Faulkner granted Plaintiff's first-level grievance. *See* NDOC AR 740.03(6)(C); (Second-Level Grievance 2006.30.50798, Ex. A to Resp. MSJ). Given that the grievance process terminated after the first-level grievance, Plaintiff needed to begin the grievance process again to complain about Nurse Perry's failure to check his blood pressure as ordered. Accordingly, Plaintiff did not exhaust his administrative remedies, and as such, the Court grants summary judgment as to Plaintiff's deliberate indifference claim against Nurse Perry. *Albino*, 747 F.3d at 1166, 1168.

### 2.  Dr. Gregory Bryan ("Dr. Bryan")

Plaintiff asserts Dr. Bryan did not respond to his requests for medical attention and failed to correctly fill out the chronic disease follow-up form, causing Plaintiff's eyesight to deteriorate. (Am. Compl. at 4–5). Defendants argue Dr. Bryan is not liable under Section 1983 because Dr. Bryan never treated Plaintiff and did not write the order directing the medical staff to check Plaintiff's blood pressure once a week for four weeks despite his name being on it. (*See* MSJ 11:4–19, 11:25–12:3). Plaintiff responds that Dr. Bryan knew about his hypertension because he ordered for Plaintiff to receive weekly blood pressure checks. (Resp. MSJ 15:24–16:7).

A defendant is liable under Section 1983 "only upon a showing of personal participation by the defendant." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). Therefore, a plaintiff must allege facts sufficient to show that each defendant was deliberately indifferent and caused the harm; a defendant does not become liable for an Eighth Amendment violation merely because a co-

worker or subordinate was deliberately indifferent. *Starr v. Baca*, 652 F.3d 1202, 1206-07 (9th Cir. 2011).

Here, to support the instant Motion, Defendants offer Dr. Bryan's declaration stating that he did not sign the October 10, 2017, order, (Decl. Dr. Bryan ¶ 15, Ex. B to MSJ), but that it was Mr. Faulkner because one day after the October 10, 2017, order was issued, Mr. Faulkner granted Plaintiff's first-level grievance and stated that he requested Plaintiff receive blood pressure checks. (Inmate Grievance Report Level 1, Ex. A to Resp. MSJ). In response, Plaintiff provides his medical records, which bears Dr. Bryan's name next to the October 10, 2017, order directing that Plaintiff must receive weekly blood pressure checks for four weeks. (NDOC Physician's Orders, Ex. A to Resp. MSJ). This demonstrates that a genuine dispute of material fact exists as to whether Dr. Bryan signed the order, and thus, personally participated in the alleged constitutional violation.

Next, Defendant argues that there is no causal connection between Dr. Bryan's alleged misconduct and Plaintiff's purported harm. (*See* MSJ 13:3–16). They contend Plaintiff did not claim that he suffered significant harm due to delayed medication. (*Id.* 13:11–16). However, Plaintiff specifically claims that Dr. Bryan failed to respond to his requests for medical attention regarding his hypertension. (Am. Compl. at 4–5). Given Plaintiff's eye examination forms stating that he is a suspect for glaucoma, it is possible Dr. Bryan's failure to respond could have caused Plaintiff to be a suspect for glaucoma. *See Allergan, Inc. v. Alcon Lab'ys, Inc.*, 200 F. Supp. 2d 1219, 1221 (C.D. Cal. 2002), *aff'd*, 324 F.3d 1322 (Fed. Cir. 2003) (explaining that "[r]isk factors for glaucoma have traditionally included people with diabetes [and] high blood pressure"); (NDOC Eye Examination Form at 1–2, 4–7, Ex. B to Resp. MSJ, ECF No. 75-2) (showing that prior to filing a kite in 2017, Plaintiff was not a suspect for glaucoma). *Cf. Northington v. Hawk-Sawyer*, No. CV 04-1032 CBM (MLGx), 2014 WL 794321, at *8 (C.D. Cal. Feb. 20, 2014) (finding a physician's failure to treat and closely

monitor an inmate's "depressive symptoms" regarding liver disease actually and proximately caused the inmate's condition to deteriorate). Thus, Defendants have not met their burden of demonstrating that there is no genuine issue of material fact as to whether Dr. Bryan's failure to respond to Plaintiff's requests for medical attention caused him to be suspect for glaucoma. *See Adickes*, 398 U.S. at 159–60. Accordingly, the Court denies summary judgment as to Plaintiff's deliberate indifference claim against Dr. Bryan.

### 3. Associate Warden Jennifer Nash ("Nash")

Plaintiff claims Nash denied him an opportunity to receive medical attention when she allegedly denied Plaintiff's informal grievance. (Am. Compl. at 5–7).[4] Defendants contend Nash did not fail to address and resolve his medical issues because she did not author the response to Plaintiff's informal grievance. (MSJ 15:8–23) (citing to Inmate Grievance Report Level IF, Ex. A to MSJ, ECF No. 65-1). They contend that Nash did not investigate the medical staff's failure to monitor his blood pressure because her signature only indicates that NDOC received Plaintiff's grievance and that she forwarded it to the medical staff. (MSJ 15:21–16:2). In response, Plaintiff avers Nash was aware of how the medical staff delayed his treatment because as associate warden and grievance coordinator, she oversaw operations of the medical facility. (Resp. MSJ 31:4–10). He argues Nash denied him medical care by not investigating his history and issues with the medical staff. (*See id.* 31:10–32:2).[5]

Normally, a charging nurse or designee of the Director of Nursing responds to informal grievances related to medical issues. NDOC AR 740.08(2)(B). The grievance coordinator then approves responses to informal grievances. *Id.* at 740.01(6). Further, an associate warden is

---

[4] Plaintiff points to NDOC's grievance process as the method through which Nash should have, but failed to, address and resolve HDSP's failure to monitor his blood pressure after he brought it to her attention. (*See* Resp. MSJ 31:10–17); (Am. Compl. at 5–7).

[5] Plaintiff also alleges Nash's response to call a "man down" when facing a medical emergency was improper because she is not a qualified medical practitioner. (Am. Compl. at 6). The Court, however, will not address this claim because it did not survive the screening phase. (*See* Screening Order 8:9–13).

responsible for "managing the grievance process at each institution and any facilities under the control of the parent institution." *Id.* at 740. Here, Plaintiff offers two ways in which Nash engaged in deliberate indifference: (1) by allegedly denying his informal grievance; and (2) by failing to investigate the medical staff's failure to monitor his blood pressure as ordered. (*See* Resp. MSJ 31:10–17); (Am. Compl. at 5–7). The Court will address each argument in turn.

First, Defendants demonstrate that a genuine issue of material fact does not exist regarding whether Nash authored the response to Plaintiff's informal grievance. The Inmate Grievance Report that responds to the informal grievance bears the name "ABuen," not Nash, indicating that Nash did not author the report triggering Plaintiff's deliberate indifference claim. (Inmate Grievance Report Level IF, Ex. A to Resp. MSJ). Similarly, Nash declares that she did not author the Inmate Grievance Report but only received Plaintiff's informal grievance and forwarded it to the medical department for review and response. (*See* Nash Decl. ¶¶ 11–12, Ex. I to MSJ). In addition, NDOC AR 740.08(2)(B) and 740.01(6) direct the grievance coordinator to sign off on the medical staff member's response to an inmate's informal grievance. To that end, Plaintiff's Informal Grievance bears two identical signatures on the lines designated for the grievance coordinator to sign. (Informal Grievance 2006.30.50798, Ex. A to Resp. MSJ). These signatures are identical to Nash's signatures in her answers to Plaintiff's interrogatories and in her declaration. (*Compare* Informal Grievance 2006.30.50798, Ex. A to Resp. MSJ), (*with* Def. Nash's Answers to Pl.'s Interrog., Ex. D to Resp. MSJ, ECF No. 75-3), (*and* Decl. Associate Warden Jennifer Nash ("Nash Decl."), Ex. I to MSJ, ECF No. 65-1)). In contrast, the Informal Grievance Report bears a signature different from the aforementioned signatures. (Inmate Grievance Report Level IF, Ex. A to Resp. MSJ). Thus, the evidence indicates that Nash complied with NDOC AR 740.08(2)(B) and 740.01(6) and did not author the Inmate Grievance Report. As the burden now shifts to Plaintiff to show a genuine issue of material fact exists, it is apparent that he cannot do so because he only offers

the Inmate Grievance Report to lend support to his argument. Accordingly, the Court grants summary judgment as to Plaintiff's deliberate indifference claim against Nash as it relates to Plaintiff's contention that she authored the response to his informal grievance.

Second, Defendants demonstrate that a genuine issue of material fact does not exist regarding whether Nash failed to investigate the medical staff's failure to monitor his blood pressure as ordered. Defendants claim Nash is not responsible for responding to informal grievances, and therefore, Nash did not know about Plaintiff's history of issues with the medical staff. (*See* MSJ 15:15–16:2). Nash declares that as grievance coordinator, she only forwards informal grievances related to medical issues to the medical department. (*See* Nash Decl. ¶¶ 5, 7, 10–11, Ex. I to MSJ). This is consistent with NDOC AR 740.08(2)(B), dictating that only members of the medical staff should respond to informal grievances regarding medical issues. In addition, she also states in an answer to Plaintiff's interrogatories that she was unaware of circumstances related to Plaintiff's lack of treatment. (Def. Nash's Answers to Pl.'s Interrog. No. 5, Ex. D to Resp. MSJ, ECF No. 75-3). Thus, the evidence Defendants present, in conjunction with NDOC AR 740.08(2)(B), shows Nash was unaware of Plaintiff's history of issues with the medical staff.

To demonstrate a genuine issue of material fact exists, Plaintiff argues Nash knew of his issues because as associate warden and grievance coordinator, she was responsible for overall operations of the facility. (Resp. MSJ 31:4–10); (Def. Nash's Answers to Pl.'s Interrog. No. 1, Ex. D to Resp. MSJ). However, other than providing Nash's general responsibilities at HDSP, Plaintiff does not provide specific evidence demonstrating that Nash knew of Plaintiff's history of issues with the medical staff. As such, Plaintiff does not show that there is a genuine issue of material fact regarding whether Nash failed to investigate the medical staff's failure to monitor his blood pressure as ordered. *Bhan*, 929 F.2d at 1409 (explaining that the nonmoving party "must produce specific evidence, through affidavits or admissible discovery material, to

show that the dispute exists"). Therefore, the Court grants summary judgment as to Plaintiff's deliberate indifference claim against Nash as it relates to Plaintiff's contention that she failed to investigate the medical staff's failure to monitor his blood pressure as ordered. Accordingly, summary judgment is granted as to Plaintiff's deliberate indifference claims against Nash.

### 4. Dr. Romeo Aranas ("Dr. Aranas")

Plaintiff alleges Dr. Aranas ignored Plaintiff's second-level grievance about the medical staff not checking his blood pressure as ordered and responded by inexplicably discussing the treatment of rashes, a condition Plaintiff did not complain about in his grievance. (Am. Compl. at 10–11). Defendants maintain Dr. Aranas was unaware of any facts from which an inference could be drawn that Plaintiff was at risk of serious harm, neither that Dr. Aranas drew the inference because his response to the second-level grievance did not discuss hypertension or blood pressure checks, but only rashes. (*See* MSJ 18:4–12).

As discussed *supra*, to satisfy the subjective prong of a deliberate indifference claim, a plaintiff must show that (1) a defendant purposefully acted or failed "to respond to a prisoner's pain or possible medical need" and (2) that indifference caused harm. *Jett*, 439 F.3d at 1096 (citing *McGuckin*, 974 F.2d at 1060). Also, the Medical Director should review and respond to a second-level grievance regarding medical issues. NDOC AR 740.10(1)(E).

Here, Defendants offer evidence showing that Plaintiff likely cannot demonstrate that Dr. Aranas failed to respond to his hypertension. Dr. Aranas' answer to Plaintiff's interrogatories states that he does not know the details of Plaintiff's previous complaints regarding lack of proper blood pressure checks because neither is he involved in Plaintiff's treatment, nor has he examined Plaintiff. (Def. Romeo Aranas' Answers to Pl.'s Interrog. No. 8, Ex. D to Resp. MSJ, ECF No. 75-3). He also states he is not "aware of circumstances of lack of treatment or unresponsive to treatment to [Plaintiff's] hypertension." (*See id.* at No. 5, Ex. D

to Resp. MSJ). Taken together, the evidence Defendants present demonstrate Plaintiff may not be able to show Dr. Aranas failed to respond to his hypertension.

However, Plaintiff demonstrates with evidence that a genuine issue of material fact exists. Plaintiff offers the fact that he submitted his second-level grievance to HDSP as proof that Dr. Aranas knew that the medical staff did not check his blood pressure as ordered. (Resp. MSJ 25:25–26:9); (Inmate Grievance Report Level 2, Ex. A to Resp. MSJ, ECF No. 75-1). Since Dr. Aranas was the Medical Director, he was charged with reviewing and responding to Plaintiff's second-level grievance. *See* NDOC AR 740.10(1)(E). This, coupled with the fact that Dr. Aranas responded to the second-level grievance demonstrates that it is possible Dr. Aranas read Plaintiff's second-level grievance. *See id.* Thus, it is possible that Dr. Aranas was aware that the medical staff failed to check Plaintiff's blood pressure as ordered. *See id.* In addition, failure to respond to an inmate's serious medical needs can cause harm in the form of the deterioration of the inmate's condition. *See Northington*, 2014 WL 794321, at *8. The Court is unconvinced that Dr. Aranas was unaware of Plaintiff's medical issues simply because he discussed rashes instead of Plaintiff's hypertension in his response to the second-level grievance. Thus, Plaintiff has demonstrated that a genuine issue of material fact exists of which a factfinder must determine the truth. *T.W. Elec. Serv., Inc.*, 809 F.2d at 631 (explaining that a nonmoving party need only show that "the claimed factual dispute . . . require[s] a jury or judge to resolve the parties' differing versions of the truth at trial).

Next, Defendant argues that there is no causal connection between Dr. Aranas' alleged misconduct and Plaintiff's purported harm. (*See* MSJ 18:2–3). However, given that Plaintiff's eye examination forms state that he is a suspect for glaucoma, it is possible that Dr. Aranas potentially ignoring Plaintiff's second-level grievance about the medical staff not checking his blood pressure as ordered could have caused Plaintiff to be a suspect for glaucoma. *See Allergan, Inc.*, 200 F. Supp. 2d at 1221 (explaining that "[r]isk factors for glaucoma have

traditionally included people with diabetes [and] high blood pressure"); (NDOC Eye Examination Form at 1–2, 4–7, Ex. B to Resp. MSJ, ECF No. 75-2) (showing that prior to filing a kite in 2017, Plaintiff was not a suspect for glaucoma). *Cf. Northington*, 2014 WL 794321, at *8 (finding a physician's failure to treat and closely monitor an inmate's "depressive symptoms" regarding liver disease actually and proximately caused the inmate's condition to deteriorate).  Thus, Defendants have not met their burden of demonstrating that there is no genuine issue of material fact as to whether Dr. Aranas potentially ignoring Plaintiff's second-level grievance about the medical staff not checking his blood pressure as ordered could have caused Plaintiff to be a suspect for glaucoma. *See Adickes*, 398 U.S. at 159–60.  Accordingly, the Court denies summary judgment as to Plaintiff's deliberate indifference claim against Dr. Aranas.

In sum, the Court grants summary judgment as to Plaintiff's deliberate indifference claims against Nurse Perry and Nash and denies summary judgment regarding Plaintiff's deliberate indifference claims against Drs. Bryan and Aranas.  The Court now turns to the issue of qualified immunity.

**B.  Qualified Immunity[6]**

Defendants argue they are entitled to qualified immunity because they did not violate Plaintiff's constitutional rights.  They contend neither Drs. Bryan nor Aranas were aware of Plaintiff's hypertension. (MSJ 22:16–20).  Further, they aver that given the circumstances and their level of awareness, knowledge, and acts regarding Plaintiff's medical issues, it was not clearly established that they violated Plaintiff's constitutional rights. (*Id.* 23:3–10).  In response, Plaintiff claims Dr. Bryan violated his Eighth Amendment right against cruel and unusual punishment by ignoring his medical requests and delaying his hypertension treatment.

---

[6] Because the Court has granted summary judgment as to Plaintiff's deliberate indifference claims against Nurse Perry and Nash, the Court will not discuss whether qualified immunity applies to these Defendants.

(Resp. MSJ 24:20–28). He also argues Dr. Aranas violated the Eighth Amendment by ignoring the physician's order for Plaintiff to receive weekly blood pressure checks for four weeks. (*See id.* 30:6–20).

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citation omitted). Thus, to overcome a claim of immunity, Plaintiff must plead "facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). A right is "clearly established" when "'[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what [she] is doing violates that right.'" *Jones v. Las Vegas Metro. Police Dep't*, 873 F.3d 1123, 1130 (9th Cir. 2017) (quoting *al-Kidd*, 563 U.S. at 741).

"Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct." *Kisela v. Hughes*, ___ U.S. ___, 138 S. Ct. 1148, 1152 (2018) (citation omitted). While this analysis does not require a case directly on point for a right to be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." *al-Kidd*, 563 U.S. at 741.

First, the Court has found that Plaintiff has shown sufficient evidence to create a genuine issue of material fact regarding whether Dr. Bryan signed an order directing that Plaintiff receive weekly blood pressure checks for four weeks, which would then suggest that Dr. Bryan knew about Plaintiff's hypertension. Further, Plaintiff demonstrated a genuine issue of material fact exists as to whether Dr. Aranas was aware that the medical staff failed to check Plaintiff's

blood pressure as ordered, indicating that he also could have known about Plaintiff's hypertension.

Second, Plaintiff's right to receive necessary medical care and for that medical care not to be delayed is clearly established in this circuit. *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976) (explaining that a prison official that intentionally denies or delays an inmate's access to medical care violates the Eighth Amendment); *Tatum v. Winslow*, 122 F. App'x 309, 312 (9th Cir. 2005) ("This court's case law clearly establishes that to deny or delay access to medical care constitutes an Eighth Amendment violation."); *see also Clement v. Gomez*, 298 F.3d 898, 904 (9th Cir.2002) ("A public official's 'deliberate indifference to a prisoner's serious illness or injury' violates the Eighth Amendment ban against cruel punishment."). The parameters of this right were sufficiently clear that Drs. Bryan and Aranas would understand that denying or delaying Plaintiff necessary medical care, including care specifically prescribed by a doctor, would violate this right. *Ross v. Krueger*, No. 2:13-cv-00355-GMN, 2015 WL 1470534, at *13 (D. Nev. Mar. 31, 2015). A reasonable official would understand that failing to respond to an inmate's requests for medical attention regarding hypertension or ignoring his grievance regarding the medical staff's failure to check his blood pressure as ordered by a physician would constitute deliberate indifference, and therefore violate the Eighth Amendment prohibition against cruel and unusual punishment. *Cf. Hamilton v. Endell*, 981 F.2d 1062, 1066–67 (9th Cir. 1992*) overruled on other grounds as recognized in Ford v. Ramirez-Palmer (Estate of Ford)*, 301 F.3d 1043, 1050 (9th Cir. 2002) (holding that a prison official that violates a physician's order for reasons unrelated to an inmate's medical needs may constitute deliberate indifference); *Northington*, 2014 WL 794321, at *8 (finding a physician's failure to treat and closely monitor an inmate's "depressive symptoms" regarding liver disease actually and proximately caused the inmate's condition to deteriorate); *see also Broadus v. Clark Cty. Jail*, No. 2:04-cv-0294-RCJ-PAL, 2007 WL 9728878, at *4 (D. Nev. Jan. 19, 2007) (explaining

that hypertension is a serious medical need because if left untreated, it "will result in substantial pain and suffering and can be life threatening when severe"). Defendants' unsupported assertion that they "acted in good faith and believed that their actions were constitutional," (MSJ 23:3–10), does not demonstrate that they are entitled to qualified immunity. *See Ross*, No. 2:13-cv-00355-GMN, 2015 WL 1470534, at *13 (finding that prison officials' unsupported contention that they reasonably believed they acted consistent with case law regarding the medical care of the plaintiff was not sufficient to show they were entitled to qualified immunity). Accordingly, the Court denies summary judgment as to Defendants' qualified immunity defense.

## IV.   CONCLUSION

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment, (ECF No. 62), is **GRANTED in part and DENIED in part** to the extent consistent with this order.

**IT IS FURTHER ORDERED** that Plaintiff's Judicial Notice of Adjudicative Facts, (ECF No. 75), is **DENIED**.

**IT IS FURTHER ORDERED** that within twenty-one (21) days of the entry of this Order, the parties shall file a Proposed Joint Pretrial Order consistent with LR 16-3 and 16-4.

**DATED** this __28__ day of March, 2022.

_____
Gloria M. Navarro, District Judge
United States District Court